IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIMON PIRELA, a/k/a SALVADOR MORALES, Petitioner, v. DONALD T. VAUGHN, et al., Respondents. | CIVIL ACTION NO. 01-4017 |

**OPINION**

**Slomsky, J.** **March 24, 2014**

## I. INTRODUCTION

Before the Court is the Amended Petition of Simon Pirela a/k/a Salvador Morales ("Petitioner") for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 18.) Petitioner seeks relief based on a variety of alleged constitutional violations, including violations of his Sixth Amendment rights to a trial by jury and effective assistance of counsel, his Eighth Amendment right against cruel and unusual punishment, and his Fourteenth Amendment right to due process of law.[1]

Following a review of the filings by the parties and the pertinent record, United States Magistrate Judge Henry S. Perkin issued a Report, recommending that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability not be issued. (Doc. No. 46.) Petitioner filed a reply to the Report and Recommendation containing his objections. (Doc. No.

[1] For purposes of this Opinion, the Court has considered the Amended Petition for a Writ of Habeas Corpus (Doc. No. 18), Response to the Petition with accompanying exhibits (Doc. No. 40), the Report and Recommendation of the United States Magistrate Judge Henry S. Perkin (Doc. No. 46), Objections to the Report and Recommendation (Doc. No. 47), and the pertinent state court record.

47.) For reasons that follow, the Court will adopt in part Judge Perkin's Report and Recommendation and ultimately deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

On April 12, 1980, Petitioner killed Julio Cruz with a single gunshot wound to the chest on the 3000 block of Leithgow Street in North Philadelphia. (Doc. No. 46 at 1.) The Pennsylvania Court of Common Pleas described the facts of the case as follows:

> The shooting was the result of an argument. The victim, Julio Cruz, was driving his car to his home followed in another car by a friend, Concepcion Lopez. Lopez skidded and screeched his brakes when Cruz suddenly stopped short. The two men then observed [Petitioner] coming towards them, angry and yelling because of the noise. An argument ensued between Lopez and [Petitioner]. Cruz intervened to bring the dispute to an end. [Petitioner] threatened Cruz and then left.
>
> [Petitioner] went to his home at 3009 Leithgow Street and obtained a gun. He returned to where Lopez and Cruz parked, again threatening Cruz. He fired a shot but missed. A crowd had gathered and admonished [the defendant] to leave. The defendant again walked to his home but returned within minutes. He said to Cruz "now I am going to kill you," pulled his gun and shot Cruz at close range.
>
> [Petitioner] threatened the deceased's wife, who had witnessed the shooting, and then ran from the scene.

(Doc. No. 40 at A1-2.)

In October of 1982, the Commonwealth of Pennsylvania ("Commonwealth") charged Petitioner with capital homicide and related offenses in connection with the shooting death of Julio Cruz. (Doc. No. 46 at 1.) Petitioner was tried by jury before the Honorable Albert Sabo in the Philadelphia Court of Common Pleas. (Id.) He was represented by court-appointed counsel, Stephen P. Gallagher, Esquire. On April 7, 1983, the jury convicted Petitioner of first-degree murder and possession of an instrument of crime. (Id. at 2.) On April 8, 1983, the jury

[2] The information in this Section derives from Judge Perkin's Report and Recommendation as well as all the documents of record in this case.

sentenced Petitioner to life imprisonment. (Doc. No. 40 at 8.) On January 23, 1984, in accordance with the jury's decision, the trial court sentenced Petitioner to life in prison without the possibility of parole and a consecutive term of two-and-a-half to five years imprisonment for possession of an instrument of crime. (Id.)

Petitioner filed a timely notice of appeal in the Pennsylvania Superior Court ("Superior Court"). He was represented by court-appointed counsel, Daniel McElhatton, Esquire, on appeal. On January 21, 1986, the Superior Court affirmed the trial court's judgment of sentence.[3] Petitioner did not file a petition for allowance of appeal in the Pennsylvania Supreme Court. (Doc. No. 46 at 3; Doc. No. 40 at 9.)

On September 23, 1991, Petitioner filed a pro se motion in state court seeking relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq.[4] (Doc. No. 46 at 3.) Petitioner was represented by various court-appointed attorneys throughout the PCRA process. One of those attorneys was Willis Berry, Jr., Esquire ("Berry"). (Id.) On November 9, 1994, Berry filed a First Amended PCRA petition on Petitioner's behalf. (Id.) On February 1, 1995, the Commonwealth filed a motion to dismiss. On March 23, 1995, Berry filed a Second Amended PCRA petition, acknowledging that he mistakenly confused this case with another one of Petitioner's cases in preparation of Petitioner's First Amended Petition.[5]

---

[3] On appeal, Petitioner raised the sole issue of whether the trial court erroneously instructed the jury that it could infer malice and specific intent to kill from Petitioner's use of a deadly weapon. (Doc. No. 46 at 2-3.) The Superior Court found Petitioner's argument to be without merit. See Commonwealth v. Morales, 508 A.2d 341 (Pa. Super. 1986).

[4] The Honorable Joseph I. Papalini of the Philadelphia Court of Common Pleas was assigned to hear the motion. When a petitioner files a motion under the PCRA, the Court of Common Pleas effectively becomes the PCRA Court.

[5] Mr. Berry confused the Amended Petition with one of Petitioner's three other cases. Petitioner

Notwithstanding this mistake, the Second Amended Petition relied on the same issues presented in Petitioner's First Amended PCRA petition.[6] (Doc. No. 40 at 10.) In November 1995, Berry

---

was convicted and sentenced to death for the August 29, 1982 murder of Jorge Figueroa. In Commonwealth v. Morales, 494 A.2d 367 (Pa. 1985) ("Figueroa case"), the Pennsylvania Supreme Court affirmed Petitioner's conviction and death sentence on direct appeal, but reversed its decision during the PCRA appeal proceedings. Petitioner was sentenced to life imprisonment. See Commonwealth v. Morales, 701 A.2d 516 (Pa. 1997). Petitioner was convicted for the May 6, 1981 murder of Pablo Ortiz. In Commonwealth v. Pirela, 507 A.2d 23 (Pa. 1986) ("Ortiz case"), the Pennsylvania Supreme Court affirmed Petitioner's conviction and death sentence on direct appeal. See also Commonwealth v. Pirela, 726 A.2d 1026 (Pa. 1999). Petitioner's death sentence was vacated in 2007. Commonwealth v. Pirela, 929 A.2d 629 (Pa. 2007). He was also convicted for the August 15, 1982 robbery and murder of Ignacio Slaffman. See Pirela v. Vaughn, No. 00-cv-5331.

[6] The Second Amended PCRA Petition included the following claims:

> 1. The selection of Judge Sabo to preside over Petitioner's case constituted a special tribunal in violation of Article I, Section 15 of the Pennsylvania Constitution and violated Petitioner's right to due process of law under the Fourteenth Amendment of the United States Constitution.
>
> 2. Petitioner's trial and sentencing by a jury before Judge Sabo denied Petitioner his due process rights under the Fourteenth Amendment and produced an arbitrary and capricious capital sentence proceeding in violation of the Eighth Amendment and Article I, Section 13 of the Pennsylvania Constitution because of Judge Sabo's anti-defendant bias, as repeatedly demonstrated by specific prejudicial rulings in this case.
>
> 3. Trial counsel was ineffective for failing to seek a court appointed psychiatrist, for failing to investigate Petitioner's background and for failing to advise Petitioner that he could testify as to his personal history.
>
> 4. The repeated references to the aliases of Petitioner without any valid purpose deprived Petitioner of his due process rights.
>
> 5. Judge Sabo failed to correct trial counsel's prejudicial closing state or issue a curative instruction.
>
> 6. Petitioner was not competent to waive his right to present mitigating evidence.
>
> 7. Trial counsel was ineffective for failing to raise his own ineffectiveness.
>
> 8. Appellate and PCRA counsel were ineffective for failing to raise the aforesaid issues.

was elected to the Philadelphia Court of Common Pleas and withdrew his representation of Petitioner. On November 30, 1995, newly appointed counsel, Richard Johnson, Esquire, ("Johnson") sought leave to amend the Second Amended PCRA petition which contained the claims presented by Berry. On December 27, 1995, the PCRA court denied the motion. Ultimately, on October 19, 1998, the PCRA court denied the Second Amended PCRA petition.[7]

In September 1999, Petitioner, represented by pro bono counsel Mary R. Ennis, Esquire, appealed the dismissal of the PCRA petition to the Superior Court.[8] On May 5, 2000, the

---

(Doc. No. 40 at B2-3.)

[7] The PCRA court dismissed all of Petitioner's claims as meritless. (See Doc. No. 40, Ex. B at 5 9.)

[8] On appeal, Petitioner presented the following claims:

> 1. Attorney Berry was ineffective in amending [Petitioner's] pro se PCRA petition. Specifically, [Petitioner] contends that he raised five issues in his pro se petition, which Attorney Berry should have included in the amended PCRA petition.
>
> 2. Trial counsel, Attorney Gallagher, was ineffective for failing to explain the attorney-client privilege and Attorney McElhatton was ineffective in failing to raise this issue on direct appeal.
>
> 3. Trial counsel was ineffective in failing to provide [Petitioner] with a professional legal assessment of the likelihood of his success if he claimed an alibi defense and failed to provide [Petitioner] with possible pleas and defense strategies.
>
> 4. Trial counsel unreasonably advised against a self-defense claim.
>
> 5. Trial counsel was ineffective for failing to investigate adequately [Petitioner's] personal history and the facts of the case prior to trial, thereby failing to discover mitigating evidence, including witnesses who could have testified concerning the mitigating defenses.
>
> 6. Trial counsel was ineffective in failing to seek a psychiatric evaluation which would have supported the finding that [Petitioner] suffered from a mental defect and in failing to present expert psychiatric testimony, which would have established "diminished capacity, heat of passion or imperfect self-defense."

Superior Court affirmed the PCRA court's denial of relief. On November 14, 2000, the Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal to review all issues presented to the Superior Court.

On August 7, 2001, Petitioner filed a Petition for a Writ of Habeas Corpus with the United States District Court for the Eastern District of Pennsylvania. The Court stayed the Petition to allow Petitioner an opportunity to present a mental retardation claim in one of Petitioner's other state court PCRA proceedings in accordance with Atkins v. Virginia, 536 U.S. 304, 321 (2002).[9]

In October 2008, Petitioner's habeas petition was transferred to the Honorable Joel H. Slomsky, who assigned the petition to the Honorable Henry S. Perkin for a Report and Recommendation. (Doc. No. 9.) On June 11, 2009, Petitioner filed his Amended Petition for a Writ of Habeas Corpus, which challenges his state court conviction as opposed to only his sentence. (Doc. No. 18.) On August 16, 2013, Judge Perkin issued a Report and

---

> 7. Trial Counsel was ineffective in advising Petitioner not to testify at trial. Specifically, trial counsel should have advised Petitioner to testify after Petitioner told trial counsel that he had shot the victim in self-defense.
>
> 8. PCRA counsel Attorney Johnson was ineffective in sending a letter to the court seeking to amend Petitioner's amended PCRA petition when he should have filed a formal motion.

Resp., Ex. C; Commonwealth v. Morales, No. 3222 Phila. 1998, pp. 4-12 (Pa. Super. May 5, 2000).

[9] In Atkins, the United States Supreme Court held that under the Eighth Amendment and [the Court's] "evolving standards of decency," execution of a mentally retarded criminal is "excessive and that the [United States] Constitution places a substantive restriction on the State's power to take the life of a mentally retarded offender." Ford v. Wainwright, 477 U.S. 399, 405 (1986). On April 30, 2004, the state court found Petitioner to suffer from mental retardation and vacated his death sentence in the Ortiz case as unconstitutional under Atkins. Commonwealth v. Pirela, Jan. term, 1983, No. 2143 (Phila. Com. Pl. Apr. 30, 2004).

Recommendation, recommending that the Amended Petition be denied. (Doc. No. 46.) Petitioner filed objections to the Report which are now before the Court for review.

## III. STANDARD OF REVIEW

### A. Review of Habeas Corpus Petition

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas Petition may not be granted on any claim which was adjudicated on the merits in State court proceedings unless Petitioner can show that the adjudication of the claims either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Woodford v. Visciotti, 537 U.S. 19, 21 (2002). Under the AEDPA, review of state court legal and factual determinations is highly deferential. See Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) ("'[T]the AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations.' Factual determinations made by the state court are presumed to be correct, but may be rebutted by clear and convincing evidence.") (internal quotation omitted). If a state court did not adjudicate a claim on the merits, however, the deferential standard of AEDPA does not apply. Id. Rather, in such cases, "the federal habeas corpus court must conduct a de novo review over pure legal questions and mixed questions of law and fact . . . ." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)).

### B. De Novo Review of Petitioner's Objections to Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. Any party may file objections in response to the magistrate

judge's Report and Recommendation. Id. at § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also 28 U.S.C. § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's Report and Recommendation. Under that rule, Petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[.]" Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter. Salve Regina College v. Russell, 499 U.S. 225, 238 (1991). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F.Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV. ANALYSIS

In the Amended Petition for Writ of Habeas Corpus (Doc. No. 18), Petitioner raised eighteen claims for the Court to consider. The Magistrate Judge reviewed all eighteen claims, and this Court will now review Petitioner's objections to the Report and Recommendations.

Because the Magistrate Judge found several of the claims unexhausted and procedurally defaulted, the Court will briefly discuss the standards for determining exhaustion and procedural default.

### A. Exhaustion and Procedural Default

#### 1. Exhaustion

It is a well-established principle that a state prisoner must exhaust all of his claims by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). See also 28 U.S.C. § 2254(b)(1)(A). To do this, a petitioner must have presented his claims to the state court's highest tribunal. Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012), cert. denied, 133 S. Ct. 669 (2012). "The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of states courts in protecting federally guaranteed rights." Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir.), cert. denied, 504 U.S. 944 (1992).

Under the exhaustion requirement, a petitioner must show that the claim raised in the federal habeas petition was "fairly presented" to the state courts. Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). See also Baldwin v. Reese, 541 U.S. 27, 29 (2009) (same). This requires a federal habeas petitioner to demonstrate that "the claim brought in federal court [is] the substantial equivalent of that presented to the state courts." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989) (citations omitted), cert. denied, 493 U.S. 1036 (1990). In other words, the legal theory and the facts supporting a federal claim must have been presented to the state courts. Id.; see also Ross v. Petsock, 868 F.2d 639, 641 (3d Cir. 1989); Gibson v. Scheidemantel, 805 F.2d 135, 139 (3d Cir. 1986). Substantial

equivalence is not sufficiently demonstrated if only a "somewhat similar state-law claim was made." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982)). Federal courts "refuse to take cognizance of arguments that are made in passing without proper development." Johnson v. Williams, 133 S.Ct. 1088, 1095 (2013).

**2. Procedural Default**

In federal habeas cases, a petitioner must not only have exhausted his state remedies, but must "also have properly done so by giving the [s]tate a fair opportunity to pass upon his claims. O'Sullivan, 456 U.S. at 854 (Stevens, J., dissenting) (citing Darr v. Burford, 339 U.S. 200, 204 (1950)). When a petitioner has deprived the state courts of that opportunity, procedural default prohibits federal habeas relief. Coleman v. Thompson, 501 U.S. 722, 729-32 (1991). A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729. A state law ground is "independent" when resolution of the state law question does not depend on a federal constitutional ruling. Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Such a rule is "adequate" if, at the time of the alleged default, "it was 'firmly established and regularly followed' . . . ." Lewis v. Horn, 581 F.3d 92, 105 (3d Cir. 2009) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (quotation omitted)). The "independent and adequate" requirement ensures that the petitioner will have had fair notice of the need to follow the state procedural rule. Bronshtein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005).

The Supreme Court has carved out an exception to the procedural default rule. If a petitioner has procedurally defaulted his claims, he is ineligible for federal habeas relief absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Murray v. Carrier,

477 U.S. 478, 485-95 (1986)); see also Coleman, 501 U.S. at 750; Peterkin v. Horn, 176 F. Supp. 2d 342, 353 (E.D. Pa. 2001) (stating that upon a finding of procedural default, review of a federal habeas petition is prohibited unless the petitioner can show "cause for his failure to comply with state procedural rules and prejudice resulting therefrom; or that a fundamental miscarriage of justice will occur if not considered"). "Cause" for default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Murray, 477 U.S. at 492. Thus, cause is shown when "the factual or legal basis for a claim was not reasonably available to counsel, or . . . 'some interference by officials,' made compliance impracticable[.]" Id. at 488 (internal citations omitted). The cause must be "something that cannot fairly be attributed to the petitioner." Johnson v. Klem, No. 04-410, 2004 WL 1175575, at *2 (E.D. Pa. May 26, 2004) (quoting Coleman, 501 U.S. at 754). On the other hand, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray, 477 U.S. at 486.

To demonstrate prejudice, Petitioner must show:

> [N]ot merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied "fundamental fairness" at trial.

Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). If both cause and prejudice are successfully shown, procedural default will be excused, and the Court may review the merits of the claim. As noted above, procedural default may also be excused if a petitioner can demonstrate that a fundamental miscarriage of justice will occur. A fundamental miscarriage of justice will occur if a Petitioner can establish that in light of new evidence it is more likely

than not that no reasonable juror would have convicted him absent the claimed error. Schlup v. Delo, 513 U.S. 298, 327-28 (1995).

**3. Exhaustion vs. Procedural Default**

Although the doctrines of exhaustion and procedural default tend to go hand-in-hand, they represent two analytically distinct judge-made rules. O'Sullivan, 526 U.S. at 850 (Stevens, J., dissenting). Generally, the exhaustion requirement is purely a rule of timing. Id. at 856. The doctrine's purpose is to determine "whether an applicant for federal relief could still get the relief he seeks in the state system." Id. (citing Engle v. Isaac, 456 U.S. 107, 125-26, n. 28 (1982)). More simply, the exhaustion requirement focuses on the "availability of state procedures at the time when the federal court is asked to entertain a habeas petition." Id. at 852. If an applicant currently has an avenue to raise his claims in state court, a federal court must refrain from intervening in the process. Id.

Although the standards are somewhat connected, the procedural default doctrine requires a federal habeas court to ask how a petitioner exhausted his state court remedies. Id. at 853-54. This inquiry "ensure[s] that state prisoners not only become ineligible for state relief before raising their claim in federal court, but also that they give state courts a sufficient opportunity to decide those claims before doing so." O'Sullivan, 456 U.S. at 853 (Stevens, J., dissenting). If at the time a petitioner filed for habeas relief there were no state remedies available to him because he failed to comply with the state's timing requirements, the petitioner has "exhausted" his state remedies. If the federal courts allowed state prisoners to obtain review by merely allowing the time to run on state remedies and then hastily running to the federal system, the exhaustion rule and comity interests could be easily upset. Id. at 853-54. Thus, in federal habeas cases, "[federal

courts] ask not only whether an applicant has exhausted his state remedies; [federal courts] also ask how he has done so." Id. at 854.

**B. Petitioner's Objections in Claim I are Unavailing because Petitioner's Freestanding Actual Innocence Claim is Not Cognizable on Habeas Review and Cannot Act as a Gateway for His Other Procedurally Defaulted Claims.**

In Claim I of the Amended Petition, Petitioner argued that he is actually innocent of first-degree murder. (Doc. No. 18 at 30-34.) In addition, he argued that his freestanding actual innocence claim must act as a gateway to permit the Court to review his otherwise procedurally defaulted claims of constitutional error. (Id. at 31.) The Magistrate Judge denied habeas relief, finding that Petitioner's freestanding actual innocence claim is neither cognizable on federal habeas review, nor can it act as a gateway to review other procedurally defaulted claims. (Doc. No. 46 at 13.)

Petitioner objects to the Magistrate Judge's Report and Recommendation on Claim I and has advanced four objections. (Doc. No. 47 at 3.) First, Petitioner objects to the Report for concluding that Herrera v. Collins, 506 U.S. 390 (1993) prohibits habeas relief in non-capital cases based on a freestanding claim of actual innocence. (Id.) Second, Petitioner objects to the Report for finding Claim I time-barred and contends that it is timely because "it relates back to other claims raised in his timely-filed [amended] petition and is subject to equitable tolling." (Id. at 4.) Third, Petitioner objects to the Magistrate Judge's finding that this claim is procedurally defaulted and asserts that "any procedural default resulting from his failure to raise this claim in his PCRA proceedings should be excused." (Id. at 8.) Fourth, Petitioner objects to the Magistrate Judge's assessment that Petitioner did not adequately allege a Schlup gateway claim, arguing that the Magistrate Judge "failed to assess [Petitioner's] proffered evidence in light of

how a reasonable juror would have reacted to it, as required by House v. Bell, 547 U.S. 518 (2006)." (Id. at 10.)

**1. Petitioner's first objection to the Report is meritless because a freestanding claim of actual innocence is not cognizable on federal habeas review**

Petitioner's first objection to the Magistrate Judge's treatment of Claim I concerns his substantive, freestanding claim of actual innocence.[10] This objection is distinct from Petitioner's fourth objection under Claim I. There, Petitioner argues that his claim acts as a procedural mechanism to allow the Court to review his otherwise constitutionally procedurally defaulted claims. That objection is discussed in Section IV.B.4. Here, on the other hand, Petitioner objects to the Magistrate Judge's finding that Herrera bars his actual innocence claims from federal habeas review. (Doc. No. 47 at 3.) The Court agrees with the Magistrate Judge that Herrera bars Petitioner's claim of actual innocence.

In Herrera, the United States Supreme Court addressed the issue of whether a freestanding claim of actual innocence was cognizable on federal habeas review. 506 U.S. at 400. The Court concluded that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."[11] Id. In January 1982, habeas petitioner Leonel Torres was convicted of capital murder and sentenced to death. Id. at 393. Torres unsuccessfully challenged his conviction on direct appeal, state collateral proceedings in Texas state courts, and on federal habeas petition. Id. In February 1992, ten

---

[10] By asserting a substantive actual innocence claim, Petitioner's goal is to have a federal habeas court review the claim on the merits.

[11] See also McQuiggin v. Perkins, 133 S. Ct. 1924, 1926 (2013) (explaining that "[w]e have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence") (citation omitted).

years after his initial conviction, Torres filed a second federal habeas petition arguing that he was "actually innocent" of the murder for which he was convicted and sentenced to death, his Eighth Amendment right against cruel and unusual punishment was violated, and his guarantee of due process of law under the Fourteenth Amendment prohibited his execution. Id. at 393-94. In support of his second federal habeas petition, Torres submitted affidavits which attempted to explain that his deceased brother committed the murder, rather than him. Id. at 393. Specifically, Torres submitted affidavits of his nephew and a schoolmate. Id. at 397. His nephew, who was nine years old at the time of the murder, alleged that he saw his father (Torres' brother) commit the murder and that Torres was not present at the scene of the crime. Id. Moreover, the schoolmate's affidavit indicated that Torres' brother told him that he committed the murder and that law enforcement was aware of this evidence. Id.

The Court found Torres' freestanding claim of actual innocence unavailing. The Court highlighted that a "petitioner otherwise subject to defenses of abusive or successive use of the writ may have his federal constitutional claim heard on the merits if he makes a proper showing of actual innocence." Id. at 404. The Court, however, clarified that a freestanding claim of "actual innocence is not itself a constitutional claim, but instead "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claims considered on the merits." Id. The petitioner in Herrera did not seek exemption of a procedural error in order to bring an independent constitutional claim that challenged his conviction or sentence. Instead, the petitioner argued that habeas relief was warranted based on newly discovered evidence that showed his conviction to be factually incorrect. Id. at 404. The Court reemphasized that "the existence of merely newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." Id. at 400 (quoting Townsend v. Sain, 372 U.S. 293,

317 (1963)). The purpose of federal habeas courts is not to cure errors of fact, but rather, to ensure that individuals are not imprisoned unconstitutionally. Id.

Additionally, the Court was not persuaded by Torres' argument that his situation required different treatment because his case was a capital case. The Court has "refused to hold that the fact that a death sentence has been imposed requires a different standard of review on federal habeas corpus." Id. at 405 (quoting Murray v. Giarratano, 492 U.S. 1, 9 (1989) (plurality opinion)). The Court further explicated:

> We may assume, for the sake of argument in deciding this case that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.

Herrera, 506 U.S. at 417. Even under this hypothetical standard, however, Torres fell far short of the heightened threshold. The Court focused on Torres' newly discovered evidence which consisted of affidavits from his nephew and schoolmate. The court noted that relying on these affidavits was suspect because the affiant's statements were procured without the benefit of cross-examination and the opportunity to determine credibility. Id. Moreover, the affidavits were suspect because they were filed over eight years after the trial, without satisfactory explanation. The affiants did not explain why they waited until the "11th hour," when the alleged murderer—Torres' brother—was dead to make their statements. Id.; see also Taylor v. Illinois, 484 U.S. 400, 414 (1988) (stating that "[I]t is . . . reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed"). Furthermore, the affidavits contained inconsistencies and could not provide a

convincing account of the events which transpired the night of the murder. Herrera, 506 U.S. at 418.

Lastly, the affidavits, when considered in light of the proof of Torres' guilt at trial—including two eyewitness identifications and numerous aspects of circumstantial evidence—pointed heavily to Torres' guilt. The Court explained that the affidavits proffered were not devoid of probative value. Had the information in the affidavits been presented at trial, the jury could have weighed its effect against the evidence offered by the State before returning its verdict. Id. at 418-19. "But coming [ten] years after [Torres'] trial, this showing of innocence falls far short of that which would have to be made in order to trigger the sort of constitutional claim which we have assumed, arguendo, to exist." Id. at 419.

The Court agrees with the Magistrate Judge's determination that under Herrera, a freestanding claim of actual innocence is not cognizable on federal habeas review. Federal habeas review of a freestanding claim of actual innocence is unavailable save an independent constitutional violation that occurred in the underlying state proceeding. Herrera, 506 U.S. at 400. As the Supreme Court explained, "a claim of 'actual innocence' is not itself a constitutional violation." Id. at 404. Like the petitioner in Herrera, Petitioner here has not alleged an independent constitutional violation which occurred in the state criminal proceedings. He has not sought excusal of a procedural miscue so that he can bring an independent constitutional claim challenging his conviction. Rather, Petitioner argues that he is entitled to habeas relief based on affidavits which tend to show that his conviction is factually incorrect. See Herrera, 506 U.S. at 404.

Petitioner argues that the Herrera decision assumed that in a non-capital case, a freestanding actual innocence claim is cognizable on federal habeas review. (Doc. No. 47 at 3.)

Petitioner's argument is incorrect. The Supreme Court in Herrera makes no distinction between capital and non-capital cases for purposes of recognizing that a freestanding claim of actual innocence is not cognizable on federal habeas review. In fact, as mentioned above, the Court explained that "[it] has refused to hold the fact that a death sentence has been imposed requires a different standard of review on federal habeas corpus." 506 U.S. at 390. Furthermore, the Herrera Court's assumption that theoretically, in a capital case, a petitioner who meets an extraordinarily high threshold for showing actual innocence could warrant federal habeas relief is not applicable here. The Court was merely explaining that it would be unconstitutional to execute someone who satisfied that extremely high standard. This is not a capital case. The fears of executing an innocent person are not present here.

Even if Herrera's hypothetical heightened standard applied to non-capital cases, Petitioner falls short of meeting the threshold. As in Herrera, the affiants' statements (including Petitioner's own affidavit) in support of his innocence are suspect because they were obtained without the benefit of cross-examination and without the ability to make credibility determinations. Moreover, analogous to Herrera, Petitioner's affidavits are suspect because they were not filed until at least nine years after trial. In fact, one affiant provided affidavits thirteen and twenty-six years after Petitioner's trial ended. Thus, even if Herrera's assumed extraordinarily high capital standard applied in this context, Petitioner would not meet the threshold.

Additionally, Petitioner asserts that "several circuits have recognized or assumed that actual innocence claims in non-capital cases are cognizable in federal habeas proceedings." (Doc. No. 47 at 3.) Petitioner's assertion is unavailing. This Court is bound to follow precedent set by the Third Circuit Court of Appeals and the United State Supreme Court. The Third Circuit

has confirmed Herrera's holding. In Fielder v. Varner, the Court of Appeals followed Herrera's holding that, "[i]t has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation." 379 F.3d 113, 122 (3d Cir. 2004) (quoting Herrera); see also Woodard v. Tennis, 2009 WL 1858237 *9 (W.D. Pa. 2009) (concluding that in a non-capital federal habeas case, a petitioner's freestanding claim that he is actually innocent of the underlying crime is not cognizable on federal habeas review without a constitutional claim attached to the actual innocence allegation). In Albrecht v. Horn, 485 F.3d 103, 122 (3d Cir. 2007), the Third Circuit addressed the merits of Petitioner's freestanding actual innocence claim under Herrera's heightened hypothetical standard. The Albrecht court, however, only considered this standard because it was a capital case. Again, because this is not a capital case, Herrera's hypothetical capital case standard for Petitioner's actual innocence claims does not apply.

Petitioner is not entitled to relief based on his freestanding claim of actual innocence. Therefore, Petitioner's non-capital freestanding actual innocence claim is unreviewable by this Court.

**2. Petitioner's objection that his freestanding claim of actual innocence is subject to equitable tolling is unavailing**

Petitioner objects to the Magistrate Judge's treatment of Claim I for a second reason. He argues that his actual innocence claim is subject to equitable tolling and is therefore not time-barred. Because Petitioner's actual innocence claim is not cognizable on federal habeas review, the Court need not address Petitioner's arguments regarding equitable tolling.

**3. Petitioner's objection that his freestanding claim of actual innocence is not procedurally defaulted is also unavailing**

Petitioner also objects to the Magistrate Judge's finding that his actual innocence claim is procedurally defaulted. Having determined that the Magistrate Judge was correct in finding this claim not cognizable, the Court need not consider Petitioner's arguments regarding procedural default.

**4. Petitioner's freestanding claim of actual innocence cannot act as a gateway for the court to review Petitioner's other procedurally defaulted constitutional claims**

As mentioned above, Petitioner objects to the Magistrate Judge's finding that Schlup v. Delo, 513 U.S. 298 (1995), does not provide a procedural gateway for review of any of Petitioner's procedurally defaulted claims.[12] Specifically, Petitioner argues:

> The Magistrate Judge failed to assess [Petitioner's] proffered evidence in light of how a reasonable juror would have reacted to it, as required by [House], 547 U.S. at 518. Moreover, the Magistrate Judge dismissed the affidavit of Frank Ramirez as suspect . . . . [Furthermore], the Magistrate Judge should not be assessing the credibility of any proffered testimony without the benefit of an evidentiary hearing . . . .[Lastly], the Magistrate Judge [incorrectly] dismissed the affidavits of [his] experts on the ground that they do not constitute new evidence for purposes of Schlup.

(Doc. No. 47 at 10-11) (emphasis in original). The Court is not persuaded that Petitioner's objections have merit.

As an initial matter, it is important to note the difference between Petitioner's freestanding actual innocence claim under Herrera and his related procedural claim under Schlup. Schlup, 513 U.S. at 314. As discussed supra, Petitioner asserted a substantive freestanding claim of actual innocence under Herrera. (Doc. No. 18 at 31.) This aspect of Claim

[12] Although Petitioner's fourth objection is related to his claim that a substantive freestanding actual innocence claim is sufficient to grant habeas review under Herrera, Petitioner's fourth objection centers on attempting to find a procedural mechanism to overcome the fact that certain constitutional claims were procedurally defaulted.

I was discussed in Section IV.B.1. Petitioner's claim under Schlup, however, is procedural rather than substantive. (Id.) A petitioner's claim for habeas relief under Schlup, is "not itself a constitutional claim, but instead a gateway through which petitioner must pass to have his otherwise barred constitutional claim[s] considered on the merits." Schlup, 513 U.S. at 315 (quoting Herrera, 506 U.S. at 404). More simply, under Schlup, a specific rule was adopted by the Court to address extraordinary scenarios where a petitioner's procedurally defaulted claims may support habeas relief because of a miscarriage of justice. House, 547 U.S. at 536.

In Schlup, the Court held that a fundamental miscarriage of justice will occur if a federal habeas petitioner can demonstrate that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House, 547 U.S. at 536-37 (quoting Schlup, 513 U.S. at 327). The Schlup court emphasized that this formula "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid a manifest injustice. 513 U.S. at 327 (quoting McClesky v. Zant, 499 U.S. 467, 494 (1991)). Usually, the presumed guilt of a habeas petitioner convicted in state court prohibits federal review of procedurally defaulted claims. House, 547 U.S. at 537. Where a petition is supported by a convincing Schlup gateway claim, however, sufficient doubt is raised "about the petitioner's guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error; hence a review of the merits of the constitutional claims is justified." Id. (quoting Schlup, 513 U.S. at 317).

In Hubbard v. Pinchak, the Third Circuit established a two-part test for assessing whether a petitioner's claim of actual innocence may act as a procedural gateway under Schlup. 378 F.3d 333, 340 (3d Cir. 2004). First, a court must determine "whether the petitioner has presented new reliable evidence . . . not presented at trial" which support his allegations of constitutional error.

Id. at 25 (citing Schlup, 513 U.S. at 316). The "new" evidence presented may be exculpatory, scientific, trustworthy eyewitness accounts, or critical physical evidence. Schlup, 513 U.S. at 327. "[W]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 25 (citing Schlup, 513 U.S. at 316). For purposes of satisfying this first step, evidence is not "new" if it was available at trial. Hubbard, 378 F.3d at 340. A petitioner's choice not to present available evidence at trial to the jury does not open the gateway. Id.

Second, if Petitioner comes forth with "new" evidence not presented to the trial jury, the court must ask "whether it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." Hubbard, 378 F.3d at 340. "The petitioner should be allowed to pass through the gateway and argue the merits of his underlying [constitutional] claims only if a petitioner presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Schlup, 513 U.S. at 316. "In assessing the adequacy of petitioner's showing, therefore, a [federal court] is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." Id. at 328.

The Schlup standard is intended for extraordinary cases and is extremely demanding. House, 547 U.S. at 538. With this in mind, however, "the Schlup standard does not require absolute certainty about the petitioner's guilt or innocence." House, 547 U.S. at 538. Instead, at the gateway stage, petitioner is required to show "that more likely than not any reasonable juror

would have reasonable doubt" about petitioner's guilt. Id. A federal court's duty is not to make an independent factual determination regarding what likely occurred, but rather, to analyze the likely impact that the new evidence would have on reasonable jurors.

In his Amended Habeas Petition, Petitioner identified four declarations which he considers "new" evidence to establish his claim of actual innocence: (1) the declaration of Maritza DeJesus, his common law wife; (2) the declaration of Leonide Morales, petitioner's sister-in-law; (3) the declaration of Frank Ramirez; and (4) the declarations of mental health expert reports showing that Petitioner suffered from brain damage and mental retardation at the time of the shooting. (Doc. No. 46 at 19.) The Magistrate Judge found that the information in the affidavits was not "new" as required under Schlup. Specifically, "the information in the May 2009 DeJesus and Ramirez affidavits and the undated Morales affidavit was available before its inclusion in Petitioner's 2009 Amended Petition." (Id. at 23.)

Additionally, the Magistrate Judge discovered that Petitioner had included similar affidavits from Morales and DeJesus in his 1991 pro se PCRA petition and knew of Ramirez's status as a potential witness on July 8, 1996, when he signed the affidavit included in Petitioner's PCRA appellate brief. Id. Nonetheless, Petitioner failed to raise a claim that consideration of the witnesses' affidavits entitled him to habeas relief until June, 2009. The Magistrate Judge also found that the "testimony of paid experts hired in conjunction with Petitioner's PCRA proceedings in his other murder cases is not new for the purposes of Schlup." (Doc. No. 46 at 25.) The Magistrate Judge concluded that Petitioner had the opportunity to present these reports as evidence before he filed his Amended Petition in 2009. (Id.) The reports were available in the early 1980s, mid 1990s, 2000, and 2003, but Petitioner failed to submit them to the Court until

2009. (Id.) Accordingly, the Magistrate Judge reasoned that Petitioner's affidavits were insufficient to meet the first part of the Schlup test. (Id.)

The Magistrate Judge also concluded that the DeJesus, Morales, and Ramirez affidavits were biased and untrustworthy. (Id. at 24.) Specifically, the Magistrate Judge found the DeJesus and Morales affidavits "untrustworthy because of the recognized bias of family members in such situations and the fact that the affidavits were not given until years after the crime." (Id.) The 1996 and 2009 Ramirez affidavits were untrustworthy because of their timing—signed thirteen and twenty-six years after Petitioner's conviction—and because of Ramirez's relationship to Petitioner. (Id.) The Magistrate Judge agreed with Respondents that Ramirez's affidavits were written out of fear of Petitioner. (Id. at 24-25.) Ramirez's biological brother, Jorge "Georgie" Figueroa, was killed by Petitioner and Petitioner's brother, Heriberto Pirela, after all three were involved in the robbery and murder of Ignacio Slaffman in August 1982. (Id. at 24.) Georgie was stabbed to death and left in the basement of an abandoned home because of both money he owed Petitioner and because he could reveal Petitioner's role in the Slaffman murder to the authorities. (Id.) Although Ramirez claimed that he "looked up" to Petitioner, from these events the Magistrate Judge reasoned that Ramirez provided the affidavits out of fear. Thus, the Magistrate Judge concluded that the "veracity of the contents of the affidavits suspect." (Id. at 25.)

Petitioner objects to the Magistrate Judge's finding that his claim of actual innocence cannot act as a gateway for the Court to review his otherwise procedurally defaulted constitutional claims. (Doc. No. 47 at 10.) Petitioner argues that the Magistrate Judge did not analyze the evidence presented in light of how a reasonable juror would have reacted to it. (Id.) Moreover, Petitioner objects to the Magistrate Judge's finding that Ramirez's affidavit was

untrustworthy and that the experts' affidavits were not new for purposes of Schlup. (Id. at 11.) Lastly, Petitioner argues that "the Magistrate Judge should not be assessing the credibility of any proffered testimony without the benefit of an evidentiary hearing." (Id.)

The Court does not entirely agree with the Magistrate Judge's determination that Petitioner unsuccessfully satisfied Schlup's first inquiry. It is uncertain whether the affidavits submitted by Petitioner are "new" for purposes of Schlup. The DeJesus and Morales declarations were not presented at Petitioner's original state court trial, but they were included in Petitioner's 1991 pro se PCRA petition. Similarly, the Ramirez declaration was not presented at trial, but was submitted with Petitioner's 1996 PCRA appellate brief. Petitioner, however, had personal knowledge of the affiants during trial. Although it is reasonable to assume that through this knowledge the affidavits were available at trial, it is unclear why Petitioner chose not to present them until later. Moreover, it is unclear whether the affidavits of the mental health experts are "new" for purposes of Schlup. The Magistrate Judge found that the information in the experts' affidavits was available "[years] before Petitioner's 2009 Amended Petition." (Doc. No. 46 at 23, 25.) This Court is not certain, however, that the information was not available at trial and that Petitioner chose not to present it to the jury. Thus, while this Court has serious doubts as to whether Petitioner's evidence to support his procedural actual innocence gateway claim is "new," the Court will assume that he satisfied the first step of the Schlup inquiry. The reliability of such evidence, however, is examined below.

The Court must now ask "whether it was more likely than not that no reasonable juror would have convicted [Petitioner] in light of the new evidence." Hubbard, 378 F.3d at 340. In its determination, the Court may examine the timing of the declarations and the credibility that the affiants would have on the reliability of the evidence. Schlup, 513 U.S. at 329. In Herrera,

the Court discussed the nature of the affidavits submitted on behalf of the petitioner. There, the Court found the affidavits suspect because they were provided eight years after the petitioner's trial with no satisfactory explanation given for the delay. 506 U.S. at 417; see also Herrera, 506 U.S. at 423 (O'Connor, J., concurring) (stating that affidavits collected ten years after the petitioner was convicted on "seemingly dispositive evidence" alleging actual innocence are not uncommon. But, "[e]xperience has shown, however, that such affidavits are to be treated with a fair degree of skepticism.").

The Court agrees with the Magistrate Judge's conclusion that Petitioner's circumstances do not present the extraordinary case where it is more likely than not that no reasonable juror would have convicted him in light of the [affidavits]." Schlup, 513 U.S. at 327. Ramirez was nine years old at the time of Mr. Cruz's death. (Doc. No. 46 at 24.) He did not submit affidavits explaining the events, however, until he was twenty-two and thirty-five years old–thirteen and twenty-six years, respectively, after the incident. Similarly, the Morales and DeJesus declarations are suspect because they were submitted nine years after his conviction. Petitioner had submitted similar affidavits in his 1991 pro se PCRA petition, but he did not raise a claim that consideration of these witnesses' accounts entitled him to federal review of his procedurally defaulted claims until June 2009. Furthermore, the Court is skeptical of the experts' affidavits. These reports were available in the early 1980s, mid 1990s, 2000, and 2003, but Petitioner failed to submit them to the Court until 2009. It bears emphasis that these are the sort of eleventh-hour affidavits vouching for a defendant that the Herrera court considered suspect. See, 506 U.S. at 417.

Moreover, the Morales and DeJesus affidavits are untrustworthy because of the relationships the affiants bear to Petitioner. In Hess v. Mazurkieweisz, the Third Circuit stated

that "alibi testimony by a defendant's family members is of significantly less exculpatory value than the testimony of an objective witness." 135 F.3d 905, 909 (3d Cir. 1998) (quoting Romero v. Tansy, 46 F.3d 1024, 1030 (10th Cir. 1995)). For this same reason, the declarations Morales (Petitioner's sister-in-law) and DeJesus (Petitioner's common law wife) are of less significant exculpatory value. As Chief Justice Rehnquist explained in Herrera,

> This is not to say that [P]etitioner's affidavits are without probative value. Had this sort of testimony been offered at trial, it could have been weighed by the jury, along with the evidence offered by the State and [P]etitioner, in deliberating upon its verdict. . . . But coming . . . years after [P]etitioner's trial, this showing of innocence falls far short of that which would have to be made . . . .

506 U.S. at 418-19. Thus, in light of the staleness of the declarations and the relationships the affiants bear to Petitioner, it is not probable that a reasonable juror would not have convicted Petitioner in light of this evidence.

Petitioner further objects that "the Magistrate Judge should not be assessing the credibility of any proffered testimony without the benefit of an evidentiary hearing." (Doc. No. 47 at 11.) A reviewing tribunal, however, is entitled to "consider the probative force of relevant evidence that was either excluded or unavailable at trial," without conducting an evidentiary hearing. Schlup, 513 U.S. at 328. In fact, the miscarriage of justice inquiry requires the reviewing tribunal to make a probabilistic determination about what reasonable jurors would do. Id. Thus, Petitioner's final objection under his "gateway" claim is meritless.

For these reasons, Petitioner's objections under Claim I are unavailing and the Court agrees with the Magistrate Judge's Report and Recommendation denying habeas relief based on Petitioner's claim of actual innocence.

**C. Petitioner's Objection under Claim II is Meritless because the Claim is Procedurally Defaulted and Petitioner has not set forth Valid Grounds to Excuse Procedural Default**

In Claim II of the Amended Petition, Petitioner argued that he was denied effective assistance of counsel at trial and on appeal. (Doc. No. 18 at 39.) He claimed that trial counsel was ineffective for failing to "investigate and present evidence and obtain necessary expert assistance that would have established available mental state defenses." (Id. at 39-40.) He also asserted that "he was denied due process and equal protection at trial because the trial court failed to provide him with necessary expert resources." (Id. at 40.) Petitioner further argued that appellate counsel was ineffective because "he failed to raise any due process or equal protection claims" on appeal. (Doc. No. 18 at 40.) The Magistrate Judge denied habeas relief on these claims upon finding that: Petitioner's claims were procedurally defaulted; Petitioner did not provide a valid excuse for the procedural default; and even if the claims were excused, Petitioner's claims were nonetheless meritless. (Doc. No. 46 at 25-33.)

Petitioner objects to these findings for four reasons. First, Petitioner objects to the finding of procedural default and argues that Claim II is not significantly different from the claims presented to the state courts. (Doc. No. 47 at 13.) Second, Petitioner objects to the Report and argues that he did establish grounds to excuse any procedural default of the underlying claims. (Id. at 14.) Third, Petitioner objects to the Magistrate Judge's conclusion that the underlying claims on the available mental state defenses are without merit, arguing that counsel should have provided him with "instructions on [self-defense, imperfect self-defense, heat of passion or diminished capacity] even if the jury might have disbelieved them." (Id. at 15.) Finally, Petitioner objects to the conclusion that his due process and equal protection claim

is procedurally defaulted, and argues that the substance of this claim was raised in his state court proceedings. (Id. at 19-20.)

**1. Petitioner's Ineffective Assistance of Trial Counsel Claim is Procedurally Defaulted**

As noted above, Petitioner objects to the Magistrate Judge's finding that his ineffective assistance of trial counsel claim is procedurally defaulted. Petitioner asserts that he has raised "essentially the same claim in his PCRA appeal to the Pennsylvania Superior Court." (Doc. No. 47 at 13.) Specifically, Petitioner argues that, "[a]lthough the Amended Petition includes more recent affidavits adding a few details to the original affidavits which had been filed with Petitioner's pro se PCRA petition . . . effectively all this information was presented to the Superior Court with a request to remand for further proceedings in the PCRA court." (Id.) The Magistrate Judge did not agree, and for reasons that follow, the Court agrees that Claim II is procedurally defaulted.

Under the doctrine of exhaustion, Petitioner is required to exhaust his state court remedies. Petitioner must establish that the claim raised in the federal habeas petition was "fairly presented" to the state courts. See Duncan, 513 U.S. at 365-66. This requires Petitioner to demonstrate that "the claim brought in federal court [is] the substantial equivalent of that presented to the state courts." Lesko, 881 F.2d at 50. Put another way, the legal theory and the facts supporting a federal claim must have been presented to the state courts. Id. Substantial equivalence is not sufficiently demonstrated if only a "somewhat similar state-law claim was made." McCandless, 172 F.3d at 261.

In Lesko, the Third Circuit found a petitioner's claim exhausted because he presented both the legal theory and the facts supporting his federal claim to the state courts. 881 F.3d at 50 (citing Ross v. Petsock, 868 F.2d 639, 641 (3d Cir. 1989); Gibson v. Scheidemantel, 805 F.2d

135, 139 (3d Cir. 1986)). There, a petitioner on direct appeal to the Pennsylvania Supreme Court asserted that the trial court erroneously admitted a witness' testimony because the prejudicial effect outweighed its probative value. Lesko, 881 F.3d at 50. Because the petitioner's federal habeas petition alleged the same legal theory and was supported by the same facts (the substance of the witness' testimony), the Third Circuit concluded that the petitioner had exhausted his state court remedies and found that the claim was not procedurally defaulted.

If Petitioner is unable to establish that his federal claim is substantially equivalent to the claim presented to the state courts, his federal claim is unexhausted. Petitioner would be required to seek relief from an available state forum prior to presenting his claim to a federal court for habeas review. If, however, a return to the state courts would be futile because of "an absence of available state corrective process[es], or . . . circumstances exist that render such process ineffective to protect the rights of the applicant," the exhaustion requirement is excused. 28 U.S.C. § 2254(b)(1); Lines v. Larkins, 208 F.3d 153, 162-63 (3d Cir. 2000). "Futility" can be established where "the state provides no means of seeking the relief sought." Lines, 208 F.3d at 163 (citing Wallace v. Cody, 951 F.2d 1170 (10th Cir. 1991)). In other words, "futility" may be established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims." Lines, 208 F.3d at 163 (quoting Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)). As explained in Lines, however:

> [I]t does not necessarily follow that [a petitioner] is entitled to an adjudication on the merits of his unexhausted federal habeas claims merely because it is now futile to attempt to raise them in state court. A finding of futility merely eliminates the procedural pretense of requiring a federal habeas petitioner to return to an unavailable state forum for nonexistent relief. Futility, without more, does not mean that the federal courts may proceed to the merits of the petitioner's claims.

208 F.3d at 166. Instead, claims which are deemed exhausted because there are "no state remedies available to [the petitioner,]" Coleman, 501 U.S. at 732, are procedurally defaulted, and "federal courts may not consider their merits unless the petitioner establishes 'cause and prejudice or a 'fundamental miscarriage of justice' to excuse the default." McCandless, 172 F.3d at 260.

The Court agrees with the Magistrate Judge that Petitioner's present claim is procedurally defaulted. On PCRA appeal before the Superior Court, Petitioner raised the following relevant claims: "(5) trial counsel was ineffective for failing to investigate adequately Petitioner's personal history and the facts of the case prior to trial, thereby failing to discover mitigating evidence, including witnesses who could have testified concerning the mitigating defenses; (6) trial counsel was ineffective in failing to seek a psychiatric evaluation which would have supported the finding that Petitioner suffered from a mental defect and in failing to present expert psychiatric testimony, which would have established "diminished capacity, heat of passion or imperfect self-defense." See supra, note 7. In Claim II of Petitioner's federal habeas petition, Petitioner claims that "he was denied effective assistance of counsel at trial because of trial's counsel's failure to investigate and present evidence and obtain necessary expert assistance that would have established available mental state defenses." (Doc. No. 18 at 39.)

Petitioner's claim in his federal habeas petition is similar to "claim 5" and "claim 6" of his PCRA appeal to the Superior Court. While the Court disagrees with the Magistrate Judge's finding that the instant claim is significantly different than those presented to the state courts (Doc. No. 46 at 26), the Court nonetheless concludes that Petitioner's claim is procedurally defaulted. Petitioner is required to demonstrate that "the claim brought in federal court [is] the substantial equivalent of that presented to the state courts." Lesko, 881 F.2d at 50. Put another

way, the legal theory and the facts supporting a federal claim must have been presented to the state courts. Id. Substantial equivalence is not sufficiently demonstrated if only a "somewhat similar state-law claim was made." McCandless, 172 F.3d at 261.

While Petitioner presents the same legal theory that he presented to the PCRA court in Claims (5) and (6), Petitioner's federal habeas claim is not substantially equivalent to those claims because the supporting facts are different. First, Petitioner seeks to introduce a 2009 affidavit of Dr. Antonio Puente, who opined that Petitioner suffers from a certain mental dysfunction. This affidavit has never been presented to the state courts in support of this claim. Petitioner also seeks to introduce three other 2009 affidavits that were not previously presented to the state court. Specifically, Petitioner points to the affidavits of the following individuals: 1) Maritza DeJesus; 2) Frank Ramirez; and 3) Leonide Morales. While the Court acknowledges that all three of these individuals provided affidavits that were presented to the PCRA courts in 1991 and 1996, the substance of their testimony is considerably different from the testimony in the 2009 affidavits that were presented in support of the instant federal habeas petition.

Petitioner relies on Vasquez v. Hillery, 474 U.S. 254 (1986) in support of his contention that he is permitted to argue new facts that do not materially alter his claim. (Doc. No. 47 at 13.) In Vasquez, the Supreme Court explained that it "never held that presentation of additional facts to the district court, pursuant to that court's directions,[13] evades the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts." 474 U.S. at 257-58. Unlike the petitioner in Vasquez, however, Petitioner has not sufficiently presented the substance of his instant habeas claim to the state courts. Indeed, Petitioner concedes that "the Amended

[13] This Court did not direct Petitioner to present additional facts in support of this claim.

Petition includes more recent affidavits adding a few details to the original affidavits . . . as well as the affidavit of Dr. Antonio Puente." (Doc. No. 47 at 13.)

As mentioned above, Dr. Puente's affidavit was never presented to the state court in support of this claim. Furthermore, the 2009 affidavits of Maritza DeJesus, Frank Ramirez and Leonide Morales do more than simply add a few details to their original affidavits from 1991 and 1996. Specifically, each new affidavit contains additional facts, not presented to the state courts, which tend to demonstrate that Petitioner was either provoked or acted in self-defense when he shot Julio Cruz. The 1991 and 1996 affidavits were devoid of such facts.

For example, all three 2009 affidavits contain testimony about Petitioner's baby crying and its effect on Petitioner's mental state at the time of the murder. (Doc. No. 18 at 44-47.) None of the affidavits presented to the state court, however, contained any reference to the baby crying or its effect on Petitioner. (Doc. No. 40-4 at p.53; Doc. No. 40-5 at pp.14-17.) Moreover, Frank Ramirez's 2009 affidavit is substantially different from his 1996 affidavit offered in support of Petitioner's PCRA appeal. In 1996, Ramirez stated that Petitioner was accused of murdering Ramirez's brother. (Doc. No. 40-4 at p.53.) This fact is missing from his 2009 affidavit. (Doc. No. 18 at 45-46.) Leonide Morales' 2009 affidavit also differs considerably from her 1991 affidavit. For instance, her 1991 affidavit merely describes the events which took place on Leithgow Street before and after the murder (Doc. No. 40-5 at p.16-17); whereas her 2009 affidavit—offered twenty-seven years after the incident—explains the emotions that she speculated Petitioner felt before he murdered Mr. Cruz, including that he was scared, felt threatened, and was afraid of being shot. (Doc. No. 18 at 46-47.)

Petitioner has failed to exhaust this claim because it is not substantially equivalent to the claim he presented to the state courts. While the legal theories are similar, Petitioner presents

entirely new affidavits, the substance of which was never presented to the state courts in support of the instant claim. As such, this claim is procedurally defaulted. Petitioner nonetheless argues that this claim should be decided on the merits. The Court addresses this argument below.

**2. Petitioner has not demonstrated sufficient grounds to excuse his procedurally defaulted ineffective assistance of trial counsel claim**

As mentioned above, Petitioner objects to the Magistrate Judge's finding that Petitioner neither established cause and prejudice nor a fundamental miscarriage of justice necessary to excuse procedural default. Specifically, Petitioner asserts that "the [Magistrate Judge's] error [is] a miscarriage of justice and that his actual innocence claim is a gateway allowing federal review of [his ineffective assistance of counsel] claim." (Doc. No. 47 at 14.) Moreover, relying on Whitney v. Horn, 280 F.3d 240 (3d Cir. 2002), Petitioner contends that "any procedural default should be excused on grounds of futility because: (a) the Superior Court has already considered and rejected evidence that he was guilty of less than first-degree murder; (b) there is no mechanism by which he can litigate this claim in state court; and (c) he received 'revolving door' justice at the PCRA stage that denied him the ability to fully and fairly litigate his claims in state court." (Doc. No. 47 at 14-15.) Furthermore, Petitioner argues that PCRA counsel's failure to raise meritorious claims of ineffectiveness is cause and prejudice to excuse any procedural default pursuant to Trevino v. Thaler, 133 S. Ct. 1911 (2013). Petitioner's objections are meritless.

When exhaustion is futile because state relief is barred due to a petitioner's failure to comply with state timing requirements, federal courts may only reach the merits of the claim if the petitioner makes the standard showing of "cause and prejudice" or establishes a fundamental miscarriage of justice. Here, exhaustion is futile because Petitioner can no longer raise this claim in state court. Petitioner's objection that procedural default should be excused on grounds of

futility is misplaced. As explained above in Section IV.C.1, "it does not necessarily follow that [a petitioner] is entitled to an adjudication on the merits of his unexhausted federal habeas claims merely because it is now futile to attempt to raise them in state court." Lines, 208 F.3d at 166. Instead, "[a] finding of futility merely eliminates the procedural pretense of requiring a federal habeas petitioner to return to an unavailable state forum for nonexistent relief." Lines, 208 F.3d at 166. The fact that it would be futile for Petitioner to try to raise this claim in state court does not excuse the procedural default of the claim.

Claims which are deemed exhausted because there are "no state remedies available to [the petitioner,]" Coleman, 501 U.S. at 732, are procedurally defaulted and "federal courts may not consider their merits unless the petitioner establishes 'cause and prejudice or a 'fundamental miscarriage of justice' to excuse the default." McCandless, 172 F.3d at 260. Petitioner contends that because he is actually innocent, he has established a miscarriage of justice which operates as a gateway for the Court to review his procedurally defaulted Claim II. This argument is unavailing. The Court has already concluded that Petitioner's actual innocence claim does not meet the Schlup gateway standard. See supra Section IV.B.4. Thus, procedural default cannot be excused for this alleged fundamental miscarriage of justice. Moreover, the Court is not persuaded that Petitioner's procedural default should be excused because "PCRA counsel's failure to raise meritorious claims of ineffectiveness is cause and prejudice to excuse any procedural default." (Doc. No. 47 at 14.) As mentioned in the Report and Recommendation, "[while] ineffective assistance of counsel may, in some instances, constitute 'cause' to excuse procedural default, in order to qualify, the ineffectiveness alleged must arise to an independent constitutional violation which claim itself must also be presented to the state court." (Doc. No. 46 at 28); Murray, 477 U.S. at 488-89; Edwards v. Carrier, 529 U.S. 446 (2000). Petitioner did

not submit this ineffectiveness claim to the state courts. (Doc No. 47 at 14 (stating "although in theory [Petitioner] could have raised the ineffectiveness of trial counsel in his direct appeal).)

Furthermore, Petitioner's reliance on Trevino v. Thaler is misplaced. In Trevino, the Supreme Court created a narrow exception finding that:

> [W]here . . . state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in Martinez applies: "[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."

133 S.Ct. at 1921 (quotation omitted). Petitioner has not shown that Pennsylvania's procedural framework, by reason of its design and operation makes it highly unlikely that Petitioner did not have a meaningful opportunity to raise an ineffective assistance of counsel claim. Rather, Petitioner merely states that there were "obstacles to obtaining appellate review of such a claim." (Doc. No. 47 at 15.) Petitioner was represented by counsel on collateral review, and Petitioner has failed to demonstrate that PCRA counsel was constitutionally ineffective. Accordingly, because Petitioner failed to raise these ineffectiveness claims in state court, he has not demonstrated "cause" to excuse the procedural default of this claim.[14] Thus, the Court agrees with the Magistrate Judge's conclusion that Petitioner has not established sufficient grounds to excuse procedural default.

---

[14] Additionally, to excuse procedural default, a petitioner must be able to demonstrate both "cause and prejudice." Even if Petitioner could show "cause," his objection does not demonstrate that he also experienced "prejudice." Thus, Petitioner's objection that procedural default should be excused is meritless.

**3. Petitioner's Ineffective assistance of counsel is not reviewable on the merits**

As noted above, Petitioner objects to the Magistrate Judge's finding that Petitioner's "claim of trial counsel ineffectiveness is meritless because the facts presented in the Amended Petition do not establish self-defense, imperfect self-defense, heat of passion or diminished capacity." (Doc. No. 47 at 15.) Specifically, Petitioner asserts that trial counsel was ineffective for failing to instruct Petitioner on these defenses.

Because this claim is procedurally defaulted and Petitioner has failed to allege sufficient grounds to excuse default, the court need not address Petitioner's objection which goes to the merits of his underlying claim.

**4. Petitioner's Claim Regarding Denial of Due Process and Equal Protection at Trial is Procedurally Defaulted and Petitioner has not Alleged Sufficient Grounds to Excuse Default**

As mentioned above, in Claim II of the Amended Petitioner, Petitioner alleged that "he was denied due process and equal protection at trial because the trial court failed to provide him with necessary expert resources." (Doc. No. 18 at 40.) Petitioner further argues that appellate counsel was ineffective because "he failed to raise any due process or equal protection claims" on appeal. Id. Petitioner objects to the Magistrate Judge's finding that his denial of due process and equal protection at trial claim is procedurally defaulted because it was not presented to the state courts. (Doc. No. 47 at 19.) Specifically, Petitioner argues that he did allege that trial counsel was ineffective for failing to obtain a mental health expert in his PCRA appeal. Id. at 19-20. Moreover, even if this claim is unreviewable, Petitioner avers that procedural default should be excused because "he has asserted an actual innocence claim as a gateway to any defaulted claims" and on grounds of futility. Id. at 20. Furthermore, he alleges that because his denial of due process and equal protection claims are meritorious, "appellate counsel's failure to

raise it on direct appeal was ineffective [assistance of counsel]." Id. For the following reasons, Petitioner's objections are unavailing.

Petitioner's due process and equal protection claims were never presented to the state courts. Petitioner's objection to the Magistrate Judge argues that in his PCRA appeal, he alleged that "trial counsel was ineffective for failing to obtain a mental health expert." (Doc. No. 47 at 19.) More simply, Petitioner argues that his claims are substantially equivalent to those raised to the state courts. Petitioner's argument, however, misses the mark. Petitioner's federal habeas claim is not substantially equivalent because it is not supported by the same supporting facts presented to the state courts. Petitioner's habeas petition includes different affidavits, reports, and expert testimony that were never presented to the state courts. As explained above in Section IV.C.1, these claims are considered exhausted because it would be futile for Petitioner to return to state court to present them. Nonetheless, the claims are procedurally defaulted and may only be adjudicated on the merits if Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."

As explained above, because Petitioner did not present this claim to the state court, ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because Claim II is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

**D. Petitioner's Objection under Claim III is Meritless because the Claim is Procedurally Defaulted and Petitioner has not set forth Valid Grounds to Excuse Procedural Default**

In Claim III of the Amended Petition, "[Petitioner] argued that he was denied the assistance of counsel and excluded from participating in his own defense when trial counsel failed to explain to him the attorney-client relationship, failed to consult with him prior to trial, failed to advise him on alternative defense strategies, and prevented him from changing defenses." (Doc. No. 18 at 82.) The Magistrate Judge recommended a denial of habeas relief based on this claim, finding that because the Superior Court had already heard and rejected Petitioner's present claim, a federal court must defer to the state court's decision. 28 U.S.C. § 2254(d)(1); (Doc. No. 46 at 36). Moreover, the Magistrate Judge found that "Petitioner provide[d] no support for his claim that trial counsel failed to inform him of all possible defenses and pleas or that he told counsel that he shot [the decedent] and wanted to pursue a self-defense claim." (Doc. No. 46 at 39.) Lastly, the Magistrate Judge concluded that "any failure to hold an evidentiary hearing would not support a claim that the Superior Court's findings were based on an unreasonable determination of the facts." (Id. at 40.)

Petitioner objects to the Magistrate Judge's Report and Recommendation for incorrectly deferring to the Superior Court's decision. (Doc. No. 47 at 21.) Specifically, Petitioner objects that the Magistrate Judge was wrong to defer to the state court because the Superior Court "arguably rejected only [Petitioner's] self-defense theory . . . and failed to address whether trial counsel was ineffective for neglecting to investigate and present any form of mental state defense" (Id.) Furthermore, Petitioner objects that the Magistrate Judge was wrong to defer to the state court because "the negligible fact-finding by the state courts with regard to [Petitioner's] claim of self-defense was unreasonable." (Id.) Petitioner further asserts that

without "hearing the testimony of witnesses who could have supported a claim of self-defense—or imperfect self-defense, provocation, and diminished capacity for that matter—the PCRA court could not make an adequate determination of whether those defenses were viable options." (Id.)

Petitioner's objections lack merit. Whether trial counsel was ineffective for failing to pursue other defenses is not part of Claim III. As noted above, Petitioner argues that he was subject to ineffective assistance of counsel for failure to advise him on alternative defense strategies. Petitioner provides no support for his claim that trial counsel failed to inform or advise him of all possible defenses and pleas. Therefore, we agree with the Magistrate Judge's denial of habeas relief.

**E. Petitioner's Objections under Claim IV are Meritless Because Petitioner was Aware of the Rights He was Waiving and Claim IV was Procedurally Defaulted and Petitioner Has not set forth Valid Grounds to Excuse Procedural Default**

In Claim IV of the Amended Petition, Petitioner argued "that he was denied his right to effective assistance of counsel when trial counsel gave unreasonable advice that induced him to make an uninformed, involuntary, and unknowing waiver of his right to testify." (Doc. No. 18 at 90.) Specifically, Petitioner averred that waiver of his right to testify was not knowing, intelligent, and voluntary because "[f]irst, trial counsel virtually abdicated his investigative obligations, and his preparation for trial was woefully inadequate"; "[s]econd the record evidence demonstrates that he did not understand the rights he was waiving"; "[t]hird he lacked the mental capacity to make such a waiver." (Id. at 90-93.) The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 43.) The Magistrate Judge found that the colloquy contradicted Petitioner's claim that he was confused about the rights he was giving up. (Id.) Moreover, the Magistrate Judge found that Petitioner's claim that he lacked mental capacity to make a waiver was procedurally defaulted because it was never presented to the state courts.

(Id.) Furthermore, the Magistrate Judge found that procedural default could not be overcome because Petitioner's claim of actual innocence did not meet the Schlup gateway standard. (Id.)

Petitioner objects to the Magistrate Judge's finding for three reasons. First, Petitioner objects to the Magistrate Judge's conclusion that this claim is meritless, arguing that "neither the court nor trial counsel ever asked [Petitioner] if he understood trial counsel's rephrasing" of what his "right" to silence meant. (Doc. No. 47 at 22.) Second, Petitioner objects to the Magistrate Judge's finding that his claim—as it pertains to not having the mental capacity to make a proper waiver—is procedurally defaulted, arguing that he is "only required to alert the state courts of the nature of his federal claim and that he is permitted to argue facts that supplement the claim as long as those facts do not materially alter the claim." (Id. at 23.) Lastly, Petitioner objects to the Magistrate Judge's finding that Petitioner has not alleged a sufficient excuse for procedural default. (Id.)

Petitioner's first objection is unavailing. The colloquy indicates that Petitioner was sufficiently aware of what rights he was waiving by remaining silent. In relevant portion, the colloquy reads:

> MR. GALLAGHER: And you indicated to me that at this time you wish to remain silent.
>
> THE DEFENDANT: Yes.
>
> MR. GALLAGHER: As is your right.
>
> THE DEFENDANT: What do you mean by that?
>
> MR. GALLAGHER: I mean by that that the jury cannot hold that against you in any way.
>
> THE COURT: Gallagher, inform him that I will so charge the jury.

MR. GALLAGHER: And that the Judge will so charge the jury in his instructions on the law. The judge will charge the jury it cannot hold the fact that you did not testify against you in any way. Do you understand that?

THE DEFENDANT: Yes.

MR. GALLAGHER [addressing the Court]: Anything further?

THE COURT: [addressing Petitioner through interpreter]: It is his decision, is he voluntarily deciding not to take the stand?

THE DEFENDANT: Yes.

THE COURT: And nobody has forced him or coerced in any way?

THE DEFENDANT: No.

THE COURT: And is there anything that he wants me to explain to him?

THE DEFENDANT: No.

THE COURT: Are you satisfied with your attorney?

THE DEFENDANT: Yes.

(N.T., 4/6/83, 9:22-23). From the record, it is clear that both the court and trial counsel ensured that Petitioner understood trial counsel's rephrasing of what his right to silence meant. Therefore, Petitioner's objection is meritless.

Additionally, the Court agrees with the Magistrate Judge's finding that Petitioner's second objection is procedurally defaulted. Petitioner's claim that he lacked the mental capacity to make a waiver was never presented to the state courts. As explained above in Section IV.C.1, however, his claim is deemed exhausted because it would be futile to return to state court.[15] His claim, however, is procedurally defaulted and can only be heard on the merits if he alleges

[15] Petitioner would be required to return to state court and file another PCRA motion alleging that he did not have the mental capacity to make a waiver. Because of the passage of time, however, there are no state remedies available to Petitioner. Thus, Petitioner's claim is considered exhausted for purposes of satisfying the exhaustion requirement.

"cause and prejudice" or a "fundamental miscarriage of justice" to overcome the procedural default.

As previously noted, because Petitioner did not present this claim to the state court, ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because Petitioner's claim that he was unaware of the rights he was waiving is unavailing. Moreover, denial of habeas relief was proper because his claim that he lacked mental capacity to make a waiver is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

### F. Petitioner's Objections under Claim V are Meritless because the Claim is Procedurally Defaulted and Petitioner has not set forth Valid Grounds to Excuse Procedural Default

In Claim V of the Amended Petition, Petitioner argued that "his right to counsel, confrontation, due process, and to present a defense was violated when he was not provided the services of a Spanish-language interpreter during critical portions of his trial." (Doc. No. 18 at 95.) Moreover, Petitioner argued that "he was denied his right to the effective assistance of counsel when trial counsel failed to object to and properly redress this denial." (Id.) Petitioner also claimed that a second translator should have been requested by counsel. The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 44.)

The Magistrate Judge found Petitioner's claim meritless because at the start of trial, the trial court indicated that witnesses' testimony on direct examination would be tape recorded and that defense counsel, together with Petitioner, could discuss the testimony with the assistance of

a court interpreter during a pause in the proceedings. (Id.) Defense counsel agreed with this process. (Id.) The Magistrate Judge found that Petitioner did not "demonstrate any specific harm brought about by [either] the lack of a second translator or the testimony of any witnesses that would have been conducted differently." (Id.) Furthermore, the Magistrate Judge concluded that Petitioner's ineffective assistance of counsel claim—regarding trial counsel's failure to object to Petitioner's denial of a second translator—is procedurally defaulted and Petitioner failed to set forth valid grounds to excuse the procedural default.

Petitioner objects to the Magistrate Judge's finding that he did not set forth valid grounds to excuse procedural default. (Doc. No. 47 at 24.) Specifically, Petitioner argues that procedural default should be excused because "the error is a miscarriage of justice overcoming any such default, and [Petitioner] has asserted an actual innocence claim as a gateway to any defaulted claims." (Id.) Moreover, Petitioner avers that procedural default should be excused on grounds of futility. (Id.) Petitioner's objections are unavailing for the following reasons.

When exhaustion is futile because state relief is barred due to a petitioner's failure to comply with state timing requirements, federal courts may only reach the merits of a claim if the petitioner makes the standard showing of "cause and prejudice" or establishes a fundamental miscarriage of justice. Petitioner's claim was never presented to the state courts. As explained above in Section IV.C.1, however, because it would be futile for Petitioner to return to the state courts to present these claims, they are considered exhausted. Nonetheless, the claims are procedurally defaulted and may only be adjudicated on the merits if Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."

As explained above, because Petitioner did not present this claim to the state court, a claim of ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural

default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because the ineffective assistance of counsel claim in Claim V is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

**G. Petitioner's Objections under Claim VI are Meritless because the Claim is Procedurally Defaulted and Petitioner has not set forth Valid Grounds to Excuse Procedural Default**

In Claim VI of the Amended Petition, Petitioner argued that "he was denied the effective assistance of counsel when trial counsel failed to move to preclude the prosecution from introducing evidence obtained as a result of an illegal search and seizure and failed to object to the improper admission of this evidence." (Doc. No. 18 at 104.) The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 46.) The Judge found Petitioner's claim procedurally defaulted because it was never raised before the state courts. (Id. at 44.) Moreover, the Judge found the claim to be meritless because "counsel cannot be considered ineffective for failing to raise a suppression motion where there is no objection which could be made under the Fourth Amendment." (Id.)

Petitioner objects to the Magistrate Judge's finding for three reasons. First, Petitioner objects to the Magistrate Judge's conclusion that his claim is procedurally defaulted, arguing that the claim was adequately raised in state courts. (Doc. No. 47 at 26.) Second, Petitioner objects to the Magistrate Judge's finding that Petitioner did not offer any valid grounds to excuse procedural default. (Id.) Specifically, Petitioner argues that procedural default should be excused because of "a miscarriage of justice and he has asserted an actual innocence claim as a

gateway to any defaulted claims." (Id.) Moreover, Petitioner avers that procedural default should be excused on grounds of futility, and cause and prejudice. (Id.) Lastly, Petitioner objects to the Magistrate Judge's finding that his claim is meritless, arguing that the Magistrate Judge "overlook[ed] a critical fact: that [the officer] could not have entered [Petitioner's] home under exigent circumstances because [Petitioner] was seen running away from his home, as the Commonwealth's own witnesses told the jury." (Id.) For the following reasons, Petitioner's objections are unavailing.

The Court agrees with the Magistrate Judge's determination that Petitioner's claim is procedurally defaulted. Petitioner never presented this claim to the state courts. As noted above, in his PCRA petition—filed by appointed counsel Berry—Petitioner raised the following claims:

> 1. The selection of Judge Sabo to preside over Petitioner's case constituted a special tribunal in violation of Article I, Section 15 of the Pennsylvania Constitution and violated Petitioner's right to due process of law under the Fourteenth Amendment of the United States Constitution.
>
> 2. Petitioner's trial and sentencing by a jury before Judge Sabo denied Petitioner his due process rights under the Fourteenth Amendment and produced an arbitrary and capricious capital sentence proceeding in violation of the Eighth Amendment and Article I, Section 13 of the Pennsylvania Constitution because of Judge Sabo's anti-defendant bias, as repeatedly demonstrated by specific prejudicial rulings in this case.
>
> 3. Trial counsel was ineffective for failing to seek a court appointed psychiatrist, for failing to investigate Petitioner's background and for failing to advise Petitioner that he could testify as to his personal history.
>
> 4. The repeated references to the aliases of Petitioner without any valid purpose deprived Petitioner of his due process rights.
>
> 5. Judge Sabo failed to correct trial counsel's prejudicial closing state or issue a curative instruction.
>
> 6. Petitioner was not competent to waive his right to present mitigating evidence.
>
> 7. Trial counsel was ineffective for failing to raise his own ineffectiveness.

> 8. Appellate and PCRA counsel were ineffective for failing to raise the aforesaid issues.

(Doc. No. 40 at B2-3.) Furthermore, as also noted previously, on appeal to the Superior Court, Petitioner raised the following issues:

> 1. Attorney Berry was ineffective in amending [Petitioner's] *pro se* PCRA petition. Specifically, [Petitioner] contends that he raised five issues in his *pro se* petition, which Attorney Berry should have included in the amended PCRA petition.
>
> 2. Trial counsel, Attorney Gallagher, was ineffective for failing to explain the attorney-client privilege and Attorney McElhatton was ineffective in failing to raise this issue on direct appeal.
>
> 3. Trial counsel was ineffective in failing to provide [Petitioner] with a professional legal assessment of the likelihood of his success if he claimed an alibi defense and failed to provide [Petitioner] with possible pleas and defense strategies.
>
> 4. Trial counsel unreasonably advised against a self-defense claim.
>
> 5. Trial counsel was ineffective for failing to investigate adequately [Petitioner's] personal history and the facts of the case prior to trial, thereby failing to discover mitigating evidence, including witnesses who could have testified concerning the mitigating defenses.
>
> 6. Trial counsel was ineffective in failing to seek a psychiatric evaluation which would have supported the finding that [Petitioner] suffered from a mental defect and in failing to present expert psychiatric testimony, which would have established "diminished capacity, heat of passion or imperfect self-defense."
>
> 7. Trial Counsel was ineffective in advising Petitioner not to testify at trial. Specifically, trial counsel should have advised Petitioner to testify after Petitioner told trial counsel that he had shot the victim in self-defense.
>
> 8. PCRA counsel Attorney Johnson was ineffective in sending a letter to the court seeking to amend Petitioner's amended PCRA petition when he should have filed a formal motion.

Resp., Ex. C; Commonwealth v. Morales, No. 3222 Phila. 1998, pp. 4-12 (Pa. Super. May 5, 2000). As evidenced by the claims raised, Petitioner did not raise this claim in his original pro se PCRA petition or his appellate PCRA petition.

When exhaustion is futile because state relief is barred due to a petitioner's failure to comply with state timing requirements, federal courts may only reach the merits of the claim if the petitioner makes the standard showing of "cause and prejudice" or establishes a fundamental miscarriage of justice. Petitioner did not present this claim to the state courts. As explained above in Section IV.C.1, because it would be futile for Petitioner to return to the state courts to present these claims, they are considered exhausted. Nonetheless, the claims are procedurally defaulted and may only be adjudicated on the merits if Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."

Because Petitioner did not present this claim to the state court, ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because the ineffective assistance of counsel claim in Claim VI is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default. Furthermore, having determined that the Magistrate Judge was correct in finding this claim procedurally defaulted, the Court need not consider Petitioner's argument regarding its merits. Accordingly, the Court agrees with the Magistrate Judge's denial of habeas relief because Petitioner's claims are procedurally defaulted and Petitioner did not set forth valid grounds to excuse procedural default.

### H. Petitioner's Objections under Claim VII are Meritless because the Claim is Procedurally Defaulted and Petitioner has not set forth Valid Grounds to Excuse Procedural Default

In Claim VII of the Amended Petition, Petitioner alleged that he "was denied due process and the effective assistance of counsel when the prosecution repeatedly introduced evidence of his alleged aliases without any limiting instruction and without objection from trial counsel." (Doc. No. 18 at 108.) The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 46-47.) The Judge found that Petitioner included the claim in his amended PCRA petition but abandoned it on appeal to the Superior Court. Therefore, the Judge found this claim procedurally defaulted. (Id.)

Petitioner objects to the Magistrate Judge's finding for two reasons. First, Petitioner objects to the Magistrate Judge's finding that the claim was procedurally defaulted, arguing that on appeal, "[Petitioner] raised a claim that his original pro se PCRA motion has presented claims of arguable merit . . . [t]hus, this claim was sufficiently raised in state court." (Doc. No. 47 at 27.) Second, Petitioner argues that "[e]ven if this claim had been procedurally defaulted, the error is a miscarriage of justice overcoming any such default, and [Petitioner] has asserted an actual innocence claim as a gateway to any defaulted claims." (Id. at 28.) Moreover, Petitioner argues that procedural default should be excused on grounds of futility and that the ineffectiveness of Petitioner's PCRA counsel establishes cause and prejudice. (Id.)

Petitioner's objections are meritless. When exhaustion is futile because state relief is barred due to a petitioner's failure to comply with state timing requirements, federal courts may only reach the merits of the claim if the petitioner makes the standard showing of "cause and prejudice" or establishes a fundamental miscarriage of justice. Petitioner did not raise this claim on appeal to the Superior Court when it reviewed the denial of the PCRA petition. Generally,

this would require Petitioner to return to the state courts before a federal court could review the claim. As explained above in Section IV.C.1, because it would be futile for Petitioner to return to the state courts to present the claims, it is considered exhausted. Nonetheless, the claims are procedurally defaulted and may only be adjudicated on the merits if Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."

Because Petitioner did not present this claim to the Superior Court, ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because Claim VII's due process and ineffective assistance of counsel claim is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

**I. Petitioner's Objections under Claim VIII are Meritless because the Claim is Procedurally Defaulted and Petitioner has not set forth Valid Grounds to Excuse Procedural Default**

In Claim VIII of the Amended Petition, Petitioner argued that "he was denied due process and the effective assistance of counsel when the prosecution improperly injected irrelevant and highly inflammatory testimony that [Petitioner] allegedly threatened [the victim's] wife after the shooting, without objection or a request for a cautionary instruction by trial counsel." (Doc. No. 18 at 113.) The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 50.) The Judge found the claim to be meritless, procedurally defaulted, and that Petitioner did not offer sufficient grounds to overcome the procedural default bar. (Id. at 48-50.)

Petitioner objects to the Magistrate Judge's finding that the claim is meritless. Petitioner argues that trial counsel was ineffective even though he objected to the allegedly inflammatory testimony because he "never requested a cautionary or limiting instruction" on the testimony. Petitioner's objection is unavailing.

When exhaustion is futile because state relief is barred due to a petitioner's failure to comply with state timing requirements, federal courts may only reach the merits of the claim if the petitioner makes the standard showing of "cause and prejudice" or establishes a fundamental miscarriage of justice. Petitioner did not raise this claim on appeal to the Superior Court when it reviewed the denial of the PCRA petition. Generally, this would require Petitioner to return to the state courts before a federal court could review the claim. As explained above in Section IV.C.1, because it would be futile for Petitioner to return to the state courts to present the claims, it is considered exhausted. Nonetheless, the claims are procedurally defaulted and may only be adjudicated on the merits if Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."

Because Petitioner did not present this claim to the Superior Court, ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because Claim VIII's due process and ineffective assistance of counsel claim is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default. Because the Court concludes that the claim is

procedurally defaulted and lacks sufficient grounds to overcome the procedural default bar, the Court need not address the merits of the claim.

**J. Petitioner's Objections under Claim IX are Meritless because the Claim is Procedurally Defaulted and Petitioner has not set forth Valid Grounds to Excuse Procedural Default**

In Claim IX of the Amended Petition, Petitioner argued that "he was denied an impartial jury, due process, and the effective assistance of counsel when his case was tried to a death-qualified jury despite the fact that it was not legitimately death-eligible, and trial counsel failed to move to quash the grave risk aggravating circumstance pretextually charged by the Commonwealth to secure strategic advantages of a death-qualified jury." (Doc. No. 18 at 117.) The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 52.) The Judge found Petitioner's claim procedurally defaulted. The Judge also found that Petitioner did not show adequate cause and prejudice to overcome the procedural default bar. (Doc. No. 46 at 50-51.) Lastly, the Judge found Petitioner's claim that trial counsel was ineffective for failing to object to a death qualified jury which was more inclined to convict him meritless. (Id. at 52.)

Petitioner objects to the Magistrate Judge's findings for three reasons. First, Petitioner objects to the Magistrate Judge's finding that the claim is procedurally defaulted. (Doc. No. 47 at 29.) Petitioner argues that in his pro se PCRA petition he complained that defense counsel "Failed to object or correct erroneous [juror] exclusions, thus depriving [Petitioner] of his right to jury." (Id.) In his appeal to the Superior Court, Petitioner alleges that he raised a claim that "his original pro se PCRA motion has presented claims of arguable merit" and this is sufficient to establish that the claim was raised on PCRA appeal. (Id. at 30.) Second, Petitioner objects to the Magistrate Judge's finding that Petitioner did not set forth valid grounds to excuse procedural default. (Id.) Specifically, Petitioner argues that "the error is a miscarriage of justice

overcoming any such default, and [Petitioner] has asserted an actual innocence claim as a gateway to any defaulted claims." (Id.) Additionally, Petitioner avers that procedural default should be excused because he has established "cause and prejudice" and futility. (Id.) Lastly, Petitioner objects to the Magistrate Judge's finding that Petitioner's claim is meritless, arguing that the "the prosecution's use of the grave risk aggravating circumstance was pretextual and intended to give advantage to the Commonwealth." (Id. at 32.)

Petitioner's objections are unavailing. When exhaustion is futile because state relief is barred due to a petitioner's failure to comply with state timing requirements, federal courts may only reach the merits of the claim if the petitioner makes the standard showing of "cause and prejudice" or establishes a fundamental miscarriage of justice. Petitioner did not raise this claim on appeal to the Superior Court when it reviewed the denial of the PCRA petition. Generally, this would require Petitioner to return to state court before a federal court could review the claim. As explained above in Section IV.C.1, because it would be futile for Petitioner to return to state court to present the claim, it is considered exhausted. Nonetheless, the claim is procedurally defaulted and may only be adjudicated on the merits if Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."

Because Petitioner did not present this claim to the Superior Court, ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because Claim IX's due process and ineffective assistance of counsel claim is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental

miscarriage of justice" to excuse the default. Because the Court concludes that the claim is procedurally defaulted and lacks sufficient grounds to overcome the procedural default bar, the Court need not address the merits of the claim.

**K. Petitioner's Objections under Claim X are Meritless because the Claim is not Cognizable on Habeas Review, the Claim is Procedurally Defaulted, and Petitioner has not set forth Valid Grounds to Excuse Procedural Default**

In Claim X of the Amended Petition, Petitioner argued that "the Commonwealth's discriminatory exercise of peremptory challenges to exclude African Americans from the jury on the basis of race violated his constitutional rights." (Doc. No. 18 at 128.) The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 52-53.) The Judge found that "because no contemporaneous objection was made by trial counsel, habeas review of [the] claim is prohibited." The Judge also found the claim to be procedurally defaulted and Petitioner did not allege sufficient grounds to excuse the procedural bar. (Id. at 52.) Furthermore, the Judge denied Petitioner's claims that he is "entitled to an evidentiary hearing, to production of the remaining untranscribed state court record, and to discovery of any handwritten notes by the prosecution during jury selection" because Petitioner cited no authority in support of such argument. (Id. at 53.)

Petitioner objects to the Magistrate Judge's findings for two reasons. First, Petitioner objects to the Magistrate Judge's conclusion that Petitioner forfeited this claim when trial counsel failed to make a contemporaneous objection. (Doc. No. 47 at 32.) Petitioner argues, relying on Judge Ambro's dissent in Abu-Jamal v. Horn, 520 F.3d 272, 281(3d Cir. 2008), cert. denied, Abu-Jamal v. Beard, 129 S.Ct. 1910 (2009), that "to the extent a contemporaneous objection to [a] Batson error may be required in the Third Circuit, that requirement is erroneous." (Id. at 33.) Second, Petitioner objects to the Magistrate Judge's conclusion that Petitioner did not

allege sufficient grounds to overcome the procedural bar. (Id.) Specifically, Petitioner argues that "the Commonwealth's failure to transcribe a complete set of voir dire proceedings deprived him of his rights to due process, a meaningful appeal, and a full and fair hearing on his post-conviction petition." (Id. at 33-34.) Moreover, the Commonwealth's error is "a miscarriage of justice overcoming any procedural default, and [he] has asserted an actual innocence claim as a gateway to any defaulted claims." (Id. at 34.) Petitioner also argues that procedural default should be excused on grounds of futility. (Id.) Lastly, Petitioner avers that "to the extent this claim involves the ineffectiveness of trial counsel, the ineffectiveness of [Petitioner's] PCRA counsel is cause and prejudice to excuse any procedural default." (Id. at 35.)

Petitioner's objections are meritless. First, Petitioner mistakenly relies on Judge Ambro's dissent rather than the precedential majority opinion. In Abu-Jamal, the Third Circuit held that the habeas petitioner forfeited his Batson claim by failing to make a timely objection. 520 F.3d at 284. There, the habeas petitioner "did not object to the prosecutor's use of peremptory challenges at any point during voir dire or at his 1982 trial." Id. at 283-84. Rather, the petitioner first raised the argument "that the prosecutor used peremptory strikes in a racially discriminatory manner on direct appeal to the Pennsylvania Supreme Court, which issued its opinion in 1989." Id. at 284. The Court emphasized that it believed that in order to preserve a Batson claim for appellate review, a contemporaneous objection to the discriminatory use of preemptory challenges must be made during jury selection. Id.

The Court agrees with the Magistrate Judge's denial of habeas review on Claim X. Under the Abu-Jamal decision, Petitioner was required to raise a contemporaneous objection regarding the prosecution's use of preemptory challenges during voir dire or at trial. He did not

do so. Accordingly, his Batson claim is not preserved and for this reason is not a basis for federal habeas review.

Petitioner's second objection is also meritless. When exhaustion is futile because state relief is barred due to a petitioner's failure to comply with state timing requirements, federal courts may only reach the merits of the claim if the petitioner makes the standard showing of "cause and prejudice" or establishes a fundamental miscarriage of justice. Petitioner did not raise the Batson claim on appeal to any state court. Generally, this would require Petitioner to return to state court before a federal court could review the claim. As explained above in Section IV.C.1, because it would be futile for Petitioner to return to state court to present the claim, it is considered exhausted. Nonetheless, the claim is procedurally defaulted and may only be adjudicated on the merits if Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."

Because Petitioner did not present this claim to the state courts, ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because Claim X's due process and ineffective assistance of counsel claim is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

**L. Petitioner's Objections under Claim XI are Meritless because the Claim is Procedurally Defaulted, and Petitioner has not set forth Valid Grounds to Excuse Procedural Default**

In Claim XI of the Amended Petition, Petitioner argued that "all prior counsel were ineffective for failing to raise all claims in the Amended Petition." (Doc. No. 18 at 147.) The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 53.) The Judge found Petitioner's claim procedurally defaulted because it was neither presented in Petitioner's 2001 original habeas petition nor to the state courts. (Id.) Moreover, the Judge found that Petitioner did not allege sufficient grounds to overcome the procedural bar. (Id. at 54.)

Petitioner objects to the Magistrate Judge's findings for two reasons. First, Petitioner objects to the Magistrate Judge's conclusion that the present claim is procedurally defaulted. Petitioner argues that because he raised the present claim under Claim X[16] of his original petition, the claim is not procedurally defaulted. (Doc. No. 47 at 35.) Second, Petitioner objects to the Magistrate Judge's finding that procedural default cannot be excused. Specifically, Petitioner argues that the Magistrate Judge's error "is a miscarriage of justice overcoming any such default, and [Petitioner] has asserted an actual innocence claim as a gateway to any defaulted claims." (Id.) Moreover, he asserts that procedural default should be excused on grounds of futility and because the ineffectiveness of Petitioner's PCRA counsel establishes cause and prejudice to excuse any procedural default. (Id. at 35-36.)

Petitioner's objections are meritless. When exhaustion is futile because state relief is barred due to a petitioner's failure to comply with state timing requirements, federal courts may only reach the merits of the claim if the petitioner makes the standard showing of "cause and

[16] Claim X of the original petition reads, "[t]o the extent that trial and/or appellate counsel failed to investigate and/or properly litigate the issues presented in this [p]etition, they provided [Petitioner] ineffective assistance of counsel, in violation of the Sixth Amendment." (Doc. No. 47 at 35.)

prejudice" or establishes a fundamental miscarriage of justice. Even if Petitioner included the present claim in his original 2001 habeas petition, the claim is still procedurally defaulted because he did not raise it before any state court. Generally, because Petitioner did not present this claim to the state court, this would require Petitioner to return to state court before a federal court could review the claim. As explained above in Section IV.C.1, because it would be futile for Petitioner to return to state court to present the claim, it is considered exhausted. Nonetheless, the claim is procedurally defaulted and may only be adjudicated on the merits if Petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice."

Because Petitioner did not present this claim to the state courts, ineffective assistance of counsel cannot demonstrate "cause" to excuse procedural default. Moreover, because the Court concluded that Petitioner's actual innocence claim did not meet the Schlup gateway standard, procedural default is not excused for a fundamental miscarriage of justice. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because Claim XI's ineffective assistance of counsel claim is procedurally defaulted and Petitioner has not demonstrated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default.

### M. Petitioner's Objection under Claim XII is Meritless because Petitioner has not set forth Valid Grounds that Show Cumulative Error

In Claim XII of the Amended Petition, Petitioner argued that "he is entitled to [habeas] relief due to cumulative prejudicial effect of the errors in this case." (Doc. No. 18 at 148.) The Magistrate Judge denied habeas relief on this claim. (Doc. No. 46 at 55.) The Magistrate Judge found that the "cumulative prejudicial effect could not rise to the level of a substantial and injurious effect given the overwhelming evidence of Petitioner's guilt." (Id. at 54.) Moreover,

the Magistrate Judge found that "even if Petitioner had demonstrated a single error, he has not demonstrated that any error undermined the fairness of his trial." (Id. at 55.)

Petitioner objects to the Magistrate Judge's finding, arguing that "[w]hile citing the correct legal standard, the Magistrate Judge appears to misapply that law by assuming that one or more of [Petitioner's] individual claims must be meritorious in order to grant relief." (Doc. No. 47 at 36.) Specifically, Petitioner argues that "under cumulative prejudice analysis, claims that individually lack merit because the petitioner was not prejudiced by the error must be considered in their totality to determine whether the petitioner was prejudiced by the combined effect of all such error." (Id.)

Petitioner's objection is unavailing. Petitioner simply restates his arguments made in the Amended Petition. Petitioner merely provides an alternative reading of the cumulative error standard without explanation of how any errors undermined his trial. Moreover, Petitioner cites no authority for his contention that the Magistrate Judge misapplied the law. Furthermore, where Petitioner objects to the Magistrate Judge's findings as erroneous, this Court has reviewed Petitioner's objections and found them meritless. Accordingly, the Court agrees with the Magistrate Judge's denial of Petitioner's habeas relief because Claim XII's cumulative error claim is baseless.

**N. Petitioner's Certificate of Appealability Objection is Meritless**

Lastly, Petitioner objects to the Magistrate Judge's recommendation that a certificate of appealability with respect to Petitioner's claims should not be granted. (Doc. No. 47 at 36.) Specifically, Petitioner argues that "'reasonable jurists would find' the denial of [Petitioner's] constitutional claims 'debatable or wrong'" and that his claims deserve encouragement to proceed further. (Id. at 36-37) (quotations omitted). The Court agrees with the Magistrate

Judge's finding that reasonable jurists would not debate the Court's determination, and a certificate of appealability should not be granted.

## V. CONCLUSION

For the reasons above, the Court will approve and adopt the Magistrate Judge's Report and Recommendation, denying Petitioner's Amended Petition for a Writ of Habeas Corpus.